IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

KATHERINE DANIEL-RIVERA,

Plaintiff,

v.                                                        CASE NO:

EVERGLADES COLLEGE d/b/a KEISER
UNIVERSITY

Defendant.
_____/

## COMPLAINT

COMES NOW, Plaintiff KATHERINE DANIEL-RIVERA, by and through his undersigned counsel, and sues the Defendant, EVERGLADES COLLEGE d/b/a KEISER UNIVERSITY, and for her cause of action, states the following:

1.      The Court has original jurisdiction over the action pursuant to 28 U.S.C. § 1331 and 1343 for Plaintiff's claims arising under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181, et seq., Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, the Declaratory Judgment Act, 28 U.S.C. §2201, and supplemental claims through 28 U.S.C. § 1367.

2.      Defendant, EVERGLADES COLLEGE d/b/a KEISER UNIVERSITY, (hereinafter referred to as "KEISER") is a post-secondary educational institution with its headquarters in Broward County, Florida, and is a public accommodation within the meaning of the Americans with Disabilities Act.

3.      KEISER is a recipient of federal financial assistance and is required to comply with Section 504 of the Rehabilitation Act of 1973 and the regulations propounded by the United States Department of Education under the Rehabilitation Act.

4.      KEISER is a public accommodation and is required to comply with Title III of the Americans with Disabilities Act (ADA) and regulations propounded by the United States Department of Justice under the ADA.

5.      KEISER has signed and filed assurances of compliance with the Department of Education conditioning the receipt of federal financial assistance on continued compliance with Section 504 of the Rehabilitation Act.

6.      Plaintiff, KATHERINE DANIEL-RIVERA (hereinafter "DANIEL-RIVERA"), is a resident and citizen of Pinellas County, Florida, and *sui juris.*

7.      Plaintiff DANIEL-RIVERA is Deaf and communicates in American Sign Language. As a result, she is a qualified individual with a disability under the definitions of the Americans with Disabilities Act, 42 USC § 12101, et seq. and Section 504 of the Rehabilitation Act.

8.      DANIEL-RIVERA has retained Disability Independence Group, Inc. and the National Association of the Deaf Law and Advocacy Center, and has agreed to pay a reasonable fee for the services rendered herein.

## FACTS AS TO KEISER UNIVERSITY

9.      KEISER is a private non-profit (formerly for-profit) university based in Florida.

10.      KEISER provides educational programs at the undergraduate and graduate levels in traditional and online delivery formats. KEISER is regionally accredited by the Southern

Association of Colleges and Schools and is also a member of the Independent Colleges and Universities of Florida.

11.     KEISER's main campus is in Fort Lauderdale, with fifteen additional branches located in other parts of Florida.

12.     KEISER also operates the Southeastern Institute, a for-profit college with four campuses that offer programs in medical assisting, medical billing and coding, paramedic training, human resource administration, and pharmacy technology.

13.     KEISER currently has an enrollment of over 20,000 students and earns over 300 million dollars in revenue per year.

14.     In 2011, KEISER sold themselves to a non-profit institution of higher education, which lifts the obligation to pay taxes and exempts KEISER from other regulatory requirements that pertain only to for-profit colleges, including that no more than 90 percent of revenues be received from Federal financial aid programs.

15.     Currently over 90% percent of KEISER's revenue is derived from federal financial aid programs, from Title IV of the Higher Education Act, including subsidized and unsubsidized Stafford loans, Pell grants, PLUS loans and multiple other small loan and grant programs. KEISER also receives funding from Department of Defense and Department of Veterans Affairs military education benefit programs

## FACTS AS TO KATHERINE DANIEL-RIVERA

16.     Since 2011, DANIEL-RIVERA has worked at the Bay Pines Veterans Administration Hospital in the Health Administration Service Department as a Medical Support Assistant. In 2014, DANIEL-RIVERA was promoted to a Radiology Medical Support Assistant

in the Imaging Service Department.  However, in order to get further promotions in her job, she is required to attend an accredited Radiologic Technology Program and be licensed by the State of Florida to practice Radiologic Technology.[1]

17.    DANIEL-RIVERA has had exceptional evaluations at her job as a Radiology Medical Support Assistant.  When she sought to obtain funding from the Veterans Association for her degree, her service chief stated "Employee seeking opportunity to grow within the medical field, she is dedicated to her service to our Veterans and she has earned that right, and funding was approved for FY 2014."

18.    DANIEL-RIVERA attended secondary school at St Augustine School for the Deaf and Blind, where all classes were conducted in American Sign Language, and she received auxiliary aids and services though all of her post-secondary school education, including receiving a certificate of Basic X-Ray Technician from the Ultimate Medical Academy in Clearwater, FL, Associates of Applied Science in Computer Engineering Technology at Tampa Technical Institute, and a certificate of completion for CPR/AED for the Professional Rescuer and the Healthcare provider.

19.    DANIEL-RIVERA reviewed programs for a Radiologic Technology Programs and researched the program advertised by Keiser University and signed up for more information.

---

[1] According to the American Society of Radiologic Technologists, "[r]adiologic technologists are the medical personnel who perform diagnostic imaging examinations and administer radiation therapy treatments." See ASRT, "Who are Radiologic Technologists?", available at http://www.asrt.org/main/careers/careers-in-radiologic-technology/who-are-radiologic-technologists (last accessed Dec. 9, 2015).

20.     On June 21, 2014, an admission counselor wrote an email to DANIEL-RIVERA and advised her that she would be a good match for KEISER UNIVERISTY and that classes start as soon as June 30, 2014.

21.     From June to July, DANIEL-RIVERA had several discussions with the admission counselor of KEISER where she learned more information regarding the Radiologic Technology Program. On July 28, 2014, DANIEL-RIVERA advised the admission counselor that she would like to apply, and DANIEL-RIVERA was invited to fill out the admissions documentation.

22.     DANIEL-RIVERA advised KEISER that she was deaf and had Attention Deficit Hyperactivity Disorder (ADHD), and that she would need accommodations for both disabilities.

23.     In order to be qualified for the program, applicants are required to take a twelve-minute assessment evaluation.  In order to be admitted to KEISER, an applicant is required to score a twelve on the assessment evaluation.

24.     DANIEL-RIVERA advised the counselor that she had ADHD and required accommodations of 50% additional time to take the examination, so she would need eighteen minutes instead of twelve minutes.

25.     KEISER denied this accommodation without informing DANIEL-RIVERA of any procedural deficiencies in her application.

26.     From August 2014, until May 2015, DANIEL-RIVERA met repeatedly with KEISER personnel and provided extensive documentation to show she had ADHD. KEISER did not advise DANIEL-RIVERA of these requirements at the outset, but rather advised her of them in piecemeal form: each time she complied with their request for documentation, they would

advise her for the first time of a requirement she had not met, or of an additional step that she needed to complete.

27.     DANIEL-RIVERA wanted to meet personally with the admission counselor to discuss the assessment test and the program, and requested a sign language interpreter for the meeting.  In response to the request, on October 7, 2014, the admission counselor stated:

> I wanted to let you know for this meeting and until you are enrolled as a student, I have been told the school is not required to provide an interpreter.  However, once you have been accepted and start classes the school can make accommodations.
>
> I know this wasn't the answer you wanted, but I am still here to help via email, phone, or if you'd like to provide an interpreter before your acceptance to the school.  If you have any concerns I'm happy to have my director speak with you regarding this.

28.     On or about October 22, 2014, DANIEL-RIVERA met with the admission counselor for KEISER.  This meeting, without an interpreter, was regarding the accommodation she needs.

29.     At the meeting, DANIEL-RIVERA was for the first time asked for a copy of her transcript to see if she was qualified for entrance to the program, and was advised for the first time that if her transcript was not sufficient, she would need to score a 20 in the entrance evaluation, rather than the 12 advised earlier.

30.     On November 3, 2014, President Cummings advised DANIEL-RIVERA for the first time that the letter for accommodation requests for the entrance evaluations were required to be within a year of the accommodation request. Mr. Cummings demanded an updated version of her accommodation request so she could move forward in the accommodation process.

31.     On November 25, 2014, DANIEL-RIVERA obtained a new note from her medical provider reaffirming her ADHD diagnosis and again requesting accommodations.   This note was faxed the same day to Director Vaugh.

32.     On December 22, 2015, Ms. Cornell advised DANIEL-RIVERA for the first time that she was required to fill out a formal request for accommodation form.

33.     On January 12, 2015, DANIEL-RIVERA sent a formal request for accommodations form to Ms. Cornell.

34.     Four months later, on May 15, 2015, DANIEL-RIVERA's accommodation for additional time and a private room was granted for the entrance examination.  KEISER set the entrance evaluation for DANIEL-RIVERA for June 24, 2015.

35.     On June 24, 2015 DANIEL-RIVERA took the test with the accommodations permitted and was advised that she had passed.  Immediately after passing the test, DANIEL-RIVERA was welcomed into the Radiologic Technology Program by the admissions counselor, Kaitlin Foss.

36.     On June 29, 2015, DANIEL-RIVERA received a letter from Chris Stabile, Associate Vice Chancellor of Teaching and Learning, and was advised that her ADHD accommodations were granted based on the original letter from the treating medical professional dated March 8, 2012.

37.     In the same letter, Dr. Stabile requested for the first time documentation from a licensed treating medical doctor regarding the fact that DANIEL-RIVERA is deaf.  At this time, KEISER had met with DANIEL-RIVERA, knew that she communicated via sign language, and spoke with her over the telephone relay service for the deaf.

38.    Despite the permanent and obvious nature of DANIEL-RIVERA's  disability, KEISER enforced their policy and procedure of requesting documentation that was stringent and not needed, including an evaluation report, dated and signed within one year from the request date, from a licensed treating medical doctor, orthopedic specialist, audiologist, speech pathologist, ophthalmologist, or other licensed professional as appropriate, which must include:

    a.   Clearly stated diagnosis, ruling out alternative explanations and diagnoses;

    b.   Defined levels of functioning and any limitations on student's academic performance caused by the disability;

    c.   Current treatment and medication; and

    d.   Current official letter (on letterhead from professional; signed and dated) stating specific recommendations.

39.    On July 1, 2015, Ms. Foss requested a meeting for DANIEL-RIVERA with the KEISER Sarasota Campus President, Todd Cunningham and Dr. Stable regarding the accommodations DANIEL-RIVERA would need before starting classes.

40.    DANIEL-RIVERA requested an interpreter to be available at the meeting so there would not be any misunderstanding.  DANIEL-RIVERA's request for an interpreter was denied, and she was directed to use an "interpreter through her iPad or pen and paper."

41.    On July 8, 2015, DANIEL-RIVERA provided an audiologists report to KEISER demonstrating that she is deaf and that she had no residual word recognition.

42.    On July 9, 2015, Ms. Cornell advised DANIEL-RIVERA that the documentation was received, and had been forwarded to the appropriate parties.

43.     DANIEL-RIVERA did not receive any notice from KEISER regarding her accommodations, but was accepted into the Radiologic Technology Program at KEISER by letter on September 29, 2015.

44.     On October 19, 2015, Ms. Foss advised her that orientation was going to be Thursday October 22nd at 5:30 P.M. and an interpreter was going to be provided for her.

45.     At Orientation at KEISER on October 22nd, DANIEL-RIVERA was handed a letter dated October 17th from the Office of the Chancellor rejecting DANIEL-RIVERA from KEISER program.  It provided the following reasons:

(a)     The University has not been able to locate a clinical site with accreditation in which you could complete a program-required clinical rotation;

(b)     The VA Hospital has not confirmed your representations for employment;

(c)     The University does not possess its own nor does it control clinical facilities; this institution is a guest of area medical facilities who have agreed to accept its students under very strict requirements;

(d)     Multiple interpreters will be required on an ongoing basis to provide appropriate scheduling and interpretation services, which will be inordinately expensive and extremely difficult to maintain;

(e)     The educational preparation and career field requires the ability to effectively and comprehensively communicate in a variety of ways and situations with patients to provide appropriate healthcare and diagnostic screening, which are not possible, given the tones, beeps and body sounds present in a treatment setting of which you will be unaware; and

(f)     The impairments you possess unfortunately will create an unintentional direct threat to the health and safety of, and contribute to potential liability issues for, patients, health care facilities, and others as well as yourself.

46.     The reasons provided by KEISER were simply a pretext for discrimination, as follows:

a.   KEISER, as well as any clinical facility, has an obligation to provide auxiliary aids or services to students, volunteers, employees or interns.   KEISER's

responsibility extends from its obligations as part of its educational programs and receipt of federal financial assistance, and any clinical site has its own obligations as an entity covered by Title I of the Americans with Disabilities Act, 42 U.S.C. § 12112, et seq., and as a recipient of federal financial assistance. See 34 C.F.R. 10.43

b.  KEISER did not have any discussions with DANIEL-RIVERA or her employer regarding the exceptional work she has been performing at the VA medical center for the past four years.

c.  KEISER cannot contract with any entity to limit or provide an student with a disability an unequal benefit to any of its program or services offered by KEISER. 42 U.S.C. § 12182(b)(1)(A)(ii); 34 C.F.R. § 104.43(b)

d.  It is neither an undue hardship or a fundamental alteration to provide auxiliary services to a deaf student, especially with the extraordinary financial resources of KEISER, and the tens of millions of dollars it receives on a yearly basis federal financial assistance.

e.  Deaf medical professionals do not pose a direct threat to the health and safety of patients, health-care facilities, or others, including themselves.

f.  The career field chosen by Ms. Daniel-Rivera is one that she has been practicing in.  In fact, numerous ASL-using deaf and hard of hearing individuals have successfully completed training for and secured employment in a variety of fields that exceed the demands of Radiologic Technology. For example, ASL-using deaf individuals currently or previously have worked as pediatricians, see Rochester Institute of Technology, "Scott Smith," available at http://www.rit.edu/ntid/healthcare/stories/scott-smith (last visited Dec. 9, 2015), and as hospitalists in teaching hospitals, see The Hospitalist, "Deaf Hospitalist Focuses on Teaching, Co-Management, Patient-Centered Care," available at http://www.the-hospitalist.org/article/deaf-hospitalist-focuses-on-teaching-co-management-patient-centered-care/ (Aug. 1, 2014).

47.  KEISER'S stated reasons for rejected DANIEL-RIVERA were based  on stereotypes and out-moded beliefs and not on the actual capabilities of DANIEL-RIVERA.

48.  KEISER did not evaluate DANIEL-RIVERA's communication skills regarding her ability to perform as a radiologic technician.

49.  As part of its program, KEISER places students in clinical or internship assignments and as part of its student accommodation policies, KEISER required students to

waive KEISER's responsibility to obtain accommodations or modifications by outside entities related to their education at KEISER, including rotation sites, clinical sites, and similar entities, and requires the student to ensure accommodations, modifications or auxiliary aids from these entities.  Further, KEISER requires students to agree to apply for accommodations from outside community agencies for accommodations, modifications, or auxiliary aids or services if KEISER is unable or unwilling to provide such auxiliary services.

50.     The expense of auxiliary aids or services to KEISER throughout all of the benefits, programs and privileges of a student's educational experience through KEISER would not be an undue burden or a fundamental alteration of the program.

51.     The acts and omissions of KEISER were either done with intentional animus, or in deliberate disregard of the protected rights of DANIEL-RIVERA as a person with a disability.

52.      DANIEL-RIVERA retained the services of Disability Independence Group and the National Association of the Deaf Law and Advocacy Center, and has agreed to pay them a reasonable fee for their services in this matter.

**COUNT ONE**
**TITLE III OF THE AMERICANS WITH DISABILITIES ACT OF 1990**

53.     Plaintiff restates paragraphs 1 through 53 as if alleged herein.

54.     Plaintiff has a physical impairment that substantially limits the major life activities of hearing and speaking. Therefore Plaintiff is an individual with a disability under Title III of the Americans with Disabilities Act ("Title III"). See 42 U.S.C. § 12102(1).

55.     KEISER is a place of education and therefore is a place of public accommodation subject to Title III. See 42 U.S.C. § 12181(7)(J).

56.     Pursuant to Title III, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

57.     Title III defines discrimination to include "subject[ing] an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(b)(1)(A)(i).

58.     Title III also defines discrimination to include "afford[ing] an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(b)(1)(A)(iii).

59.     Title III prohibits "directly or through contractual or other arrangements, utiliz[ing] standards or criteria or methods of administration—(i) that have the effect of discriminating on the basis of disability; or (ii) that perpetuate the discrimination of others who are subject to common administrative control." 42 U.S.C. § 12182(b)(1)(D).

60.     Title III further defines discrimination to include "the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for

the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered." 42 U.S.C. § 12182(b)(2)(A)(i).

61.     Title III defines discrimination to include "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(iii).

62.     Title III further provides that "[a]ny person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189.

63.     DANIEL-RIVERA is entitled to admission into KEISER's Radiologic Technology program because KEISER previously granted her admission.

64.     By rescinding DANIEL-RIVERA's offer of admission because she is deaf, KEISER (1) discriminated against DANIEL-RIVERA by denying her the opportunity to participate in or benefit from its goods, services, facilities, privileges, advantages, and accommodations; (2) impermissibly used standards or criteria or methods of administration that have the effect of discriminating against DANIEL-RIVERA on the basis of disability; (3) impermissibly imposed or applied eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally

enjoying any goods, services, facilities, privileges, advantages, or accommodations; (4) impermissibly failed to offer a course related to certification or credentialing for trade purposes in a manner accessible to DANIEL-RIVERA or offer alternative accessible arrangements; and (5) otherwise violated 42 U.S.C. §§ 12181-189.

65.     By refusing to provide interpreters for pre-admission meetings with DANIEL-RIVERA, KEISER (1) afforded DANIEL-RIVERA, on the basis of a disability, the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals; and (2) failed to take such steps as may be necessary to ensure that DANIEL-RIVERA is not excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services and otherwise; and (3) otherwise violated 42 U.S.C. §§ 12181-189.

66.     Providing interpreters for DANIEL-RIVERA would not be an undue financial burden in view of the overall financial resources of KEISER.

67.     KEISER violates Title III of the Americans with Disabilities Act by applying unnecessary eligibility barriers to DANIEL-RIVERA to obtain any accommodations to deny her an education at KEISER because she is deaf.

68.     By requesting unreasonable documentation for a known and obvious disability, KEISER violates the Americans with Disabilities Act.

69.     Title III of the Americans with Disabilities Act requires the public accommodation to respond in a timely manner to requests for modifications, accommodations, or aids to ensure equal opportunity for individuals with disabilities.

70.     KEISER violated the Americans with Disabilities Act by delaying a decision to admit DANIEL-RIVERA and refusing to providing her with auxiliary aids or services by over one year.

71.     Further, KEISER violated Title III of the Americans with Disabilities Act in requiring a student to waive other substantive rights to obtain an accommodation, as follows:

    a.   Students are required to waive their rights under The Family Educational Rights and Privacy Act (FERPA) (20 U.S.C. § 1232g; 34 CFR Part 99, by agreeing not to view education records including disability related documentation from their files.

    b.   Students are required to waive their physician-patient privilege and must provide access to the student's medical professionals to KEISER to discuss their disability;

**WHEREFORE,** Plaintiff, KATHERINE DANIEL-RIVERA, respectfully requests that this Court grant the following relief against Defendant, EVERGLADES COLLEGE d/b/a KEISER UNIVERSITY including entering a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that KEISER's practices, policies, and procedures have subjected Plaintiff to discrimination in violation of Title III of the Americans with Disabilities Act, permanently enjoining KEISER from any practice, policy, and/or procedure which will deny Plaintiff equal access to, and benefit from Defendant's services or which deny Plaintiff effective communication with Defendant. This includes entering a permanent injunction ordering KEISER:

a.  To cease discriminating against Plaintiff and other deaf or hard of hearing individuals;

b.   To promulgate, train and comply with policies and procedures to ensure that KEISER and their employees and/or agents do not discriminate against individuals who are deaf and hard of hearing;

c.  To promulgate, train and comply with procedures to ensure that KEISER will notify individuals who are deaf or hard of hearing of their right to effective communication;

d.  To restore DANIEL-RIVERA's admission to KEISER's Radiologic Technology Program;

e.  To provide auxiliary aids and services that ensure Plaintiff has full and equal access to KEISER's entire Radiologic Technology Program, including to its clinical rotations;

f.  Award reasonable costs and attorneys' fees;

g.  Award any and all other relief that this Court deems proper.

**COUNT TWO**
**VIOLATION OF  SECTION 504 OF THE REHABILITATION ACT OF 1973**

72.     Plaintiff restates paragraphs 1 through 52 as if alleged herein.

73.     Plaintiff has a physical impairment that substantially limits the major life activities of hearing and speaking. Therefore Plaintiff is an individual with a disability under 29 U.S.C. § 705(20).

74.     KEISER admitted Plaintiff to its Radiologic Technology program. Therefore, Plaintiff meets the essential eligibility requirements for Defendant's services at all times material hereto and is otherwise qualified within the meaning of 29 U.S.C. § 794.

75.     Defendant KEISER accepts federal loans or subsidies and is a recipient of federal financial assistance directly or through another recipient, including any successor, assignee, or transferee of a recipient. Therefore, KEISER is a recipient of federal financial assistance and subject to 29 U.S.C. § 794.

76.     Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and its implementing regulation, 34 C.F.R. § 104, et seq., require that no qualified individual with a disability, on the basis of that disability, be excluded from participation in,  be denied the benefit of, or otherwise discriminated against in the services, programs, or activities which receive Federal financial assistance.

77.     KEISER violated Section 504 of the Rehabilitation Act by subjecting DANIEL-RIVERA to discrimination in admission and recruitment by denying auxiliary services in admission and recruitment to KEISER.

78.     KEISER violated Section 504 of the Rehabilitation Act by rescinding DANIEL-RIVERA's admission to its program because she is deaf.

79.     KEISER violated Section 504 of the Rehabilitation Act by denying DANIEL-RIVERA access to the Radiologic Technology Program, when she had asked for no waiver of any academic requirements.

80.     KEISER had actual knowledge of its obligation to provide auxiliary aids and services  for DANIEL-RIVERA through its repeated assurances to the Department of Education that it complied with Section 504 of the Rehabilitation Act.

81.     KEISER repeatedly delayed actions and accommodations relating to DANIEL-RIVERA  because of her disability and her need for accommodation.

82.     KEISER's actions in rescinding DANIEL-RIVERA's offer of admission and denying auxiliary aids and services to DANIEL-RIVERA were either intentional, or in deliberate indifference to her rights as a person with a disability.

83.     Plaintiff has suffered lost wages, lost job opportunity, lost scholarship opportunities, severe emotional distress and damages in the past, and continues to suffer emotional distress and damages due to Defendant's violations of Section 504 of the Rehabilitation Act.

**WHEREFORE,** Plaintiff, KATHERINE DANIEL-RIVERA respectfully requests that this Court grant the following relief against Defendant, EVERGLADES COLLEGE d/b/a KEISER UNIVERSITY including entering a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that KEISER's practices, policies, and procedures have subjected Plaintiff to discrimination in violation of Section 504 of the Rehabilitation Act, permanently enjoining KEISER from any practice, policy, and/or procedure which will deny Plaintiff equal access to, and benefit from Defendant's services or which deny Plaintiff effective communication with Defendant. This includes entering a permanent injunction ordering KEISER:

a.  To cease discriminating against Plaintiff and other Deaf or hard of hearing individuals;

b.  To promulgate, train and comply with policies and procedures to ensure that KEISER and their employees and/or agents do not discriminate against individuals with disabilities;

c.  To restore DANIEL-RIVERA's admission to KEISER's Radiologic Technology Program;

d.  To provide auxiliary aids and services that ensure Plaintiff has full and equal access to KEISER's entire Radiologic Technology Program, including to its clinical rotations;

e.  Award compensatory damages;

f.  Award reasonable costs and attorneys' fees;

g.  Award any and all other relief that this Court deems proper.

## COUNT THREE
## FRAUDULENT MISREPRESENTATION

84.     Plaintiff restates paragraphs 1 through 52 as if alleged herein.

85.     KEISER has a rigorous recruitment program where it affirmatively advertises for qualified persons to attend its programs, and places further emphasis in the recruitment of persons who utilize services and programs of the Veterans Administration.

86.     At all times until she was finally denied admittance to KEISER, DANIEL-RIVERA was advised that she was fully qualified for KEISER's  Radiologic Technology Program so she can be licensed by the State of Florida to practice Radiologic Technology and be promoted at her job at the Veterans Administration facility.

87.     During such time, DANIEL-RIVERA was also advised that while they were not going to provide her with interpreter until she was an admitted student, she would be provided an interpreter once she was admitted.

88.     Based on these representations, DANIEL-RIVERA secured funding from her job to pay some of her tuition, and otherwise relied on the representations of KEISER.

89.      In promising the DANIEL-RIVERA interpreters once she obtained admission to the program, KEISER either knew or had reason to know that the statement was incorrect or inaccurate or knew it did not have any basis to make any representation of providing the interpreter for her program.

90.     KEISER expected that the representation given about accessibility would influence the Plaintiff in making the decision to attempt to gain admission to the school.

91.     DANIEL-RIVERA reasonably relied on the representations of KEISER, and despite multiple delays, unlawful barriers, and other unlawful preconditions, fulfilled all of the requirements for entry to KEISER's program.

92.     As a result of KEISER's misrepresentations, the Plaintiff obtained admission to KEISER's program and was thereafter denied and refused entry into the program after a year of making attempts to do so.

93.     Due to the fraudulent, deliberate, and unconscionable misrepresentation, plaintiff has suffered lost wages, lost job opportunity, lost scholarship opportunities, severe emotional distress and damages in the past, and continues to suffer emotional distress and damages.

**WHEREFORE,** Plaintiff, KATHERINE DANIEL-RIVERA respectfully requests that this Court grant the following relief against Defendant, EVERGLADES COLLEGE d/b/a

KEISER UNIVERSITY including entering a declaratory judgment, for actual damages, pre-judgment and post judgment interest, punitive damages and attorneys' fees and costs.

**PLAINTIFF DEMANDS A TRIAL BY JURY FOR ALL ISSUES FOR WHICH A TRIAL BY JURY IS PERMITTED.**

Respectfully submitted this **7th** day of January 2016

DISABILITY INDEPENDENCE GROUP, INC.
2990 Southwest 35th Avenue
Miami, Florida 33133
Telephone: (305) 669-2822
Facsimile: (305) 442-4181
E-Mail: mdietz@justdigit.org
aa@justdigit.org

By:     /s/ Matthew W. Dietz
Matthew W. Dietz, Esq.
Florida Bar No.: 0084905

Marc P. Charmatz, Esq. (pro hac vice pending)
Caroline E. Jackson, Esq. (pro hac vice pending)
Debra J. Patkin, Esq. (pro hac vice pending)
NATIONAL ASSOCIATION OF THE DEAF
LAW AND ADVOCACY CENTER
8630 Fenton Street, Suite 820
Silver Spring, MD 20910
Telephone: (301) 587-7466
Facsimile: (301) 587-1791
E-mail: caroline.jackson@nad.org

+